# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6227 | **DATE** | 9/28/2004 |
| **CASE TITLE** | LABORERS' PENSION FUND, et al vs. LOUCON CONSTRUCTION, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court rejects Defendant's objection and adopts with modification Magistrate Judge Mason's denial of Loucon's Motion to Bar Steve Krasnowski's Testimony and Report [doc. no. 158-1] and grants the Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity's motion for summary judgment [doc. no. 159-1]. The Court enters judgment in the Funds' favor in the amount of $296,942.76. This case is hereby terminated. Any pending motions and schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 165 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, <br><br>Plaintiffs, <br><br>v. <br><br>LOUCON CONSTRUCTION, INC., a dissolved Illinois Corporation, <br><br>Defendant. | 98 C 6227 <br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("the Funds"), have sued under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, to recover delinquent contributions, union dues, interest, liquidated damages, and audit costs allegedly owed to them by dissolved Loucon Construction, Inc. ("Loucon") and its now deceased principal, Chris Tynan.[1] The Funds allege that Tynan paid employees in cash "under the table" in order to avoid having to make benefit contributions of behalf of these

---

[1] On August 4, 2003, this Court terminated Tynan as a defendant in this case because defendants had waived their right to appeal Magistrate Judge Michael T. Mason's Report and Recommendation concluding that the action did not survive Tynan's death. *See Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995) ("Failure to file objections with the district court to a magistrate's report and recommendation waives the right to appeal all issues addressed in the recommendation, both factual and legal.").

employees. Before the Court is Defendant's objection to Magistrate Judge Mason's Minute Order of November 4, 2003 denying Defendant's Motion to Bar Steve Krasnowski's Testimony and Report and Plaintiffs' unopposed motion for summary judgment. For the reasons set forth below, the Court rejects Defendant's objection to the denial of its motion to bar, adopts Magistrate Judge Mason's ruling with modification, and grants Plaintiffs' summary judgment motion.

## FACTS

During the relevant time period, Chris Tynan was the President of Loucon. (Pls.' LR 56.1(b)(3)(A) ¶ 5.) On June 13, 1992, Loucon signed the first in a succession of collective bargaining agreements ("CBAs") with the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") and Laborers' Local Union Number 118. (*Id.* ¶¶ 6, 11.) These agreements obligated Loucon to pay union dues and make contributions on behalf of its employees covered by the agreement to pension and health and welfare funds, as well as to maintain a surety bond guaranteeing the payment of these benefits. (*Id.* ¶¶ 7, 8.) These agreements also obligated Loucon to submit its books and records to the Funds for periodic audits to determine whether Loucon was complying with these benefit contribution provisions. Finally, these agreements bound Loucon to the Funds' respective Agreements and Declaration of Trusts. (*Id.* ¶ 11.) Loucon primarily performed masonry construction and driveway paving work. (*Id.* ¶ 10.) Accordingly, the Loucon laborers covered by the agreements would be engaged generally in mixing mortar, assembling scaffolding, unloading and distributing materials to masons on a job site, and cleaning up a job site. (*Id.*; *see* Pls.' Mem. Supp. Summ. J. at 3.)

2

The Funds state that they are owed a total of $296,942.76 based on three calculations. First, an audit of Loucon's cash disbursement journals for the period of January 1, 1997 through March 31, 1998 shows that Loucon owes unpaid union dues and contributions to the Funds for hours worked by four employees, which together with liquidated damages, interest, and audit costs provided for in the CBAs, total $3,179.45. (Pls.' LR 56.1(b)(3)(A) ¶¶ 17, 20.) Next, an audit of Loucon's books and records and its cash disbursement journals for the period of April 1, 1998 through July 31, 1999, show unpaid union dues and contributions to the Funds, which when combined with liquidated damages, interest, and audit costs, total $8,287.25. (Id. ¶¶ 19, 21.)

Finally, Plaintiffs state that Loucon was engaged in paying at least some of its employees with cash "under the table" and estimate that it owes an additional $285,476.06 in unpaid union dues and contributions to the Funds, liquidated damages, interest, and audit costs. (Pls.' Mem. Supp. Summ. J. at 4.) On this point, Plaintiffs rely on Martin Flanagan, President of Laborers' Local Union Number 118, who reported that he observed both Miguel Bernal and Ernesto Junez performing work within the scope of the CBAs during a time period covered by the agreement. (Id. ¶ 14.) Tynan also admitted in a deposition that one of these workers, Miguel Bernal, performed covered work for him. (Id. ¶ 15.) Loucon's records reveal that it never submitted any benefit contributions to the Funds on behalf of either Bernal or Junez. (Id. ¶ 16.)

Based on these facts, the Funds retained the services of Steve Krasnowski, owner of Fox Estimating & Consulting, in order to review the number of hours Loucon submitted to the Masonry Institute Welfare Fund and estimate the total number of hours for laborers employed by Loucon during the period of January 1, 1994 through July 30, 1999. (Id. ¶¶ 22-24.) Patrick Lynch, a payroll compliance auditor employed by the auditing firm of Richard J. Wolf and Co.,

Inc. took Krasnowski's estimate of laborer hours and converted it into the amount of benefit contributions the Funds should have received for cash payments Loucon made to employees. (*Id.* ¶ 25.) Lynch then subtracted from this number the benefit contributions that Loucon paid during this period as well as additional amounts from the revised audits of the cash disbursement journals and other books and records. (*Id.* ¶ 26.) The amount remaining after these deductions represents union dues and benefit contributions Loucon owes to the Funds. (*Id.* ¶¶ 26-27.) John Bronson, a field representative employed by the Funds, then took the figures supplied by Lynch and added liquidated damages, interest, and audit costs pursuant to the CBAs. (*Id.* ¶ 28.)

Defendant moved to bar Krasnowski's testimony and report, arguing that it is deficient pursuant to Fed. R. Civ. P. 26 (a)(2)(B), which details what sort of disclosure must be made with respect to expert testimony. (Def.'s Mot. Bar Steve Krasnowski's Test. & Report at 1.) Magistrate Judge Mason denied this motion stating that Krasnowski was disclosed as a possible witness to testify about a reasonable calculation of damages and because as he was not an expert witness, Plaintiffs were not required to comply with the rules regarding such witnesses. (Mag. Judge Mason's Min. Order of 11/4/03.) Defendant has objected to this ruling.

## I. Defendant's Objection to Magistrate Judge Mason's Order of November 4, 2003

28 U.S.C. § 636(b)(1)(A) authorizes magistrate judges to make decisions regarding nondispositive pretrial matters. Nondispositive matters are all those falling outside of the eight listed exceptions in this same statute. 28 U.S.C. § 636(b)(1)(A), *see also Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994). A district court judge reviews a magistrate judge's decision regarding a nondispositive pretrial matter under the "clearly erroneous or contrary to law" standard. 28

4

U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). This standard means that a magistrate judge's ruling can be modified by a district court judge only if the district court judge "is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

In reviewing Magistrate Judge Mason's denial of Defendant's Motion to Bar Steve Krasnowski's Testimony and Report, this Court cannot say that it is left with the definite and firm conviction that a mistake has been made. The Court agrees with Magistrate Judge Mason's denial of defendant's motion to bar Krasnowski's testimony but for different reasons.

It is clear to this Court that Krasnowski's opinion relies on specialized knowledge within the scope of Fed. R. Evid. 702. Krasnowski's opinion as to the industry practice of employing two laborers to every three bricklayers, which is outside of the realm of lay testimony, was disclosed to Defendant prior to the discovery deadline of July 25, 2003, and Defendant did not move to extend the discovery period prior to the cut-off date and does not argue that it attempted to depose Krasnowski prior to the deadline. Further, Plaintiffs fulfilled the essential requirements of Fed. R. Civ. P. 26(a)(2)(B). His report contained a complete statement of his opinion, the basis and reasons underlying his opinion, the data on which he relied in part to form his opinion (which, together with his knowledge of industry practice, form the whole of his opinion), and his qualifications to make his conclusion. The Court notes that Defendant does not contend that it was not provided or was unaware of the bricklayer reports on which Krasnowski relied or that the documents subpoenaed from general contractors for which Loucon performed projects during the relevant time period were not made available to Loucon. Moreover, the Court finds that the omissions were not made in bad faith and that Defendant suffered little or no

prejudice as a result. Loucon, for whatever reason, chose not to respond to the summary judgment motion, discussed below, and took great risk in doing so. In sum, the Court rejects Defendant's objections and adopts as modified Magistrate Judge Mason's denial of Loucon's Motion to Bar Steve Krasnowski's Testimony and Report.

## II. Plaintiffs' Motion for Summary Judgment

When considering a motion for summary judgment, the Court seeks to determine whether there is a genuine issue of material fact necessitating resolution by a trial or whether there is no such issue and one party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The failure of a nonmoving party to respond to a motion for summary judgment does not automatically result in a judgment in favor of the moving party; the moving party must still demonstrate that there is no genuine issue of material fact and only then is it entitled to a judgment as a matter of law. *Tobey v. EXTEL/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993). In determining whether a genuine issue of material fact exists, the Court draws all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under local rules for the Northern District of Illinois, a party moving for summary judgment must file a statement of material facts to which the moving party contends there genuine issue and which entitle the moving party to judgment as a matter of law. LR 56.1(a)(3). The failure of the nonmoving to respond to a motion for summary judgment and its accompanying statement of material facts to which there is no genuine issue constitutes an admission of those facts. LR 56.1(b)(3); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.

2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). Here, Defendant has failed to respond to the motion for summary judgment. Accordingly, all properly supported facts in the Plaintiffs' statement of material facts as to which there is no genuine issue are deemed admitted for the purposes of the motion for summary judgment.

Section 1145 of ERISA states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Further, "ERISA requires an employer to keep records of its employees' hours sufficient to permit the calculation of benefits." *Trs. of the Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Savings Plan Trust Funds v. Darwan*, No. 01 C 2458, 2004 U.S. Dist. LEXIS 11967, at *72 (N.D. Ill. June 29, 2004) ("*Darwan*"); *see* 29 U.S.C. § 1059(a)(1); *Ill. Conference of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995). "At least some authorities hold that where a trust fund proves the employer is liable for delinquent contributions . . . , and the employer has failed to keep adequate records, the burden shifts to the employer to demonstrate that the fund's calculations are not accurate." *Darwan*, 2004 U.S. Dist. LEXIS 11967, at *72; *see Steve Gilbert*, 71 F.3d at 1367; *Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1337-39 (9th Cir. 1988); *Combs v. King*, 764 F.2d 818, 825-27 (11th Cir. 1985).

In this case, an audit of Loucon's cash disbursement journals for the period of January 1, 1997 through March 31, 1998 revealed that Loucon owed unpaid union dues and contributions to

the Funds for hours worked by four employees, which when combined with liquidated damages, interest, and audit costs required by the CBAs, total $3,179.45. (Pls.' LR 56.1(b)(3)(A) ¶ 20.) Tynan admitted that Loucon owed the Funds 34.5 hours of benefit contributions for Alberto Cortez for August 1997, 37 hours for Raul Espinoza for August 1997, 40 hours for Enrique Lopez for August 1997, 40 hours for Paul Holzman for October 1997, 40 hours for Holzman for January 1998, and 40 hours form Holzman for March 1998. (*Id.* ¶ 17.) Even if he had not conceded as much, Loucon's failure to respond to the motion for summary judgment results in the Court's deeming admitted the well-documented fact that Loucon owes the Fund $3,179.45 for this time period. Accordingly, there exists no genuine issue of material fact regarding liability or this calculation that requires resolution by a trier of fact.

Similarly, an audit of Loucon's books and records, as well as its cash disbursement journals, for the period of April 1, 1998 through July 31, 1999, establishes that Loucon owed unpaid union dues and contributions to the Funds, that, when added to the liquidated damages, interest, and audit costs due under the CBAs, total $8,287.25. (*Id.* ¶ 21.) This estimation is well supported, and Defendant has offered no evidence to suggest that this calculation is incorrect. Thus, no genuine issue of material fact exists regarding Loucon's liability as to this amount or the calculation of this amount.

Finally, Plaintiffs allege that Loucon paid at least some of its employees in cash "under the table" and estimate that Loucon owes an additional $285,476.06 in unpaid union dues and contributions, liquidated damages, interest, and audit costs for the period of January 1, 1994 through July 30, 1999. (*Id.* ¶ 28.) Because the Funds are both the plaintiffs and the movants, they bear the burden of offering proof as to all of the elements of their claim demonstrating that

they are entitled to judgment, whether or not the defendant offers proof to the contrary. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting *Tobey*, 985 F.2d at 332) ("Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only '*if appropriate*--that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.'") (emphasis added in *Johnson*); *see also Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.").

"[O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the fund are nonetheless proper." *Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003). However, "[i]f the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment. Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment." *Id.* at 264-65. Although this burden-shifting analysis "affects entitlement to summary judgment," it is inapplicable "[o]nce a case comes to trial." *Id.* at 265.

The Court must therefore determine: (1) whether the Funds have shown that Loucon's records were deficient; and (2) whether the Funds have produced a sound accounting suggesting that money is owed. Each is addressed in turn.

In addition to the deficiencies discussed above, Plaintiffs point to the affidavit of Martin

9

Flanagan, President of Laborers' Local Union Number 118, who states that on February 17, 1998, he observed two individuals, Miguel Bernal and Ernesto Junez, performing work covered by the terms of the CBAs. (Pls.' LR 56.1(a)(3) ¶ 14.) Tynan admitted in a deposition that one of these workers, Miguel Bernal, a laborer, performed work covered under the CBAs during the relevant time period. (*Id.* ¶ 15.) Flanagan's statement that Ernesto Junez was also seen performing covered work is deemed admitted due to Defendant's failure to respond to the motion for summary judgment. Loucon's records reveal that it never submitted any benefit contributions to the Funds on behalf of either Bernal or Junez. (*Id.* ¶ 16.) Further, Steve Krasnowski, an expert on masonry estimation with over sixteen years of experience estimating and managing projects in the masonry industry, states that there is a large discrepancy between the laborer hours Loucon reported and the laborer hours he calculated according to the mason industry standard based on the types of jobs Loucon was performing. (Pls.' Ex. F, Krasnowski Decl. ¶ 2; *id.*, Ex. F-1, Letter of 7/14/03.)

Based on these well-substantiated examples of Loucon's substandard record keeping, the Court holds that Plaintiffs have demonstrated that Loucon's records were deficient. Because Defendant failed to respond to the summary judgment motion, it has failed to fulfill its burden of production to explain why its payments to the fund were proper. Thus, the Court grants the Funds' motion for summary judgment as to liability for additional payments.

Next, the Court addresses whether the Funds have produced a sound accounting suggesting that money is owed, *i.e.*, whether there is a sound basis for the $285,476.06 figure presented by the Funds. First, the Funds rely on Krasnowski, who reviewed the audit report of the number of hours paid and reported by Loucon Construction to the Masonry Institute Welfare

Fund during the period of January 1, 1994 through July 30, 1999. (Pls.' LR 56.1(a)(3) ¶ 23; Pls.' Ex. F, Krasnowski Decl. ¶ 3.) He researched the types of jobs Loucon performed for its clients. (Pls.' LR 56.1(a)(3) ¶ 23; Pls.' Ex. F, Krasnowski Decl. Ex. F-1, Letter of 7/14/03.) By employing what he termed was the mason industry's standard ratio of two laborers to three bricklayers, he calculated that Loucon should have reported 41,144.03 laborer hours during the relevant time period based on the number of bricklayer hours Loucon actually reported to the Masonry Institute Welfare Fund for that period. (Pls.' LR 56.1(a)(3) ¶ 24; Pls.' Ex. F, Krasnowski Decl. ¶ 4.)

In addition, the Funds rely on the declaration of Patrick Lynch, who has twenty-one years of experience as a payroll compliance auditor. (Pls.' LR 56.1(a)(3) ¶ 25; *see* Pls.' Ex. G, Lynch Decl. ¶ 2.) Lynch converted the 41,144.03 laborer hours (estimated by Krasnowski) into the amount of benefit contributions Loucon owed to the Funds for the relevant time period. (Pls.' LR 56.1(a)(3) ¶ 25; Pls.' Ex. G, Lynch Decl. ¶ 3.) From the 41,144.03 laborer hours, he subtracted the laborer hours paid and reported by Loucon, as well as laborer hours for individuals that Loucon had challenged and provided documentation or testimony during the audit process.[2] (Pls.' LR 56.1(a)(3) ¶ 26; Pls.' Ex. G, Lynch Decl. ¶ 3.) He then evenly distributed the remaining hours over the audit period and applied the benefit contribution rates in effect pursuant to the CBA during the relevant corresponding time period and determined the benefit contributions Loucon owed to the Welfare Fund ($110,021.58), Pension Fund ($57,356.63), Training Fund ($3,593.93), MCIAF/Safety Fund ($737.77), and LECET Fund ($90.93). (Pls.' LR 56.1(a)(3) ¶

---

[2] These hours were reflected in the revised audit of Loucon's cash disbursement journals for the period of January 1997 through March 1998 and the revised audit of Loucon's books and records for the period of April 1, 1998 through July 31, 1999. (Bronson Aff. ¶¶ 5-6.)

27; Pls.' Ex. G, Lynch Decl. ¶ 4.) He calculated the amount of union dues owed for each period according to the wage rate in effect during the period in question (total $9,131.83). (Pls.' LR 56.1(a)(3) ¶ 27; Pls.' Ex. G, Lynch Decl. ¶ 4.)

Next, John Bronson, a field representative employed by the Funds, states that he took the totals provided by Lynch with regard to the Welfare Fund, Pension Fund, Training Fund, MCIAF/Safety Fund, and LECET Fund and calculated and added the interest and liquidated damages due pursuant to the terms of the CBAs. (Pls.' Ex. A, Bronson Aff. ¶ 7.) To that subtotal, he added the cost of the audits as well as the total dues owed as calculated by Lynch. (*Id.*) Bronson states that Loucon owes an additional $285,476.06 for cash payments to employees for the period of January 1, 1994 through July 30, 1999. (Pls.' LR 56.1(a)(3) ¶ 28.)

Upon its review of the record, the Court holds that the Funds have produced a sound accounting suggesting that $285,476.06 is owed by Loucon for the cash payments made to employees for the period of January 1, 1994 through July 30, 1999. That this estimate is approximate does not warrant a denial of the motion for summary judgment. "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records . . . ." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946) (addressing FLSA); *see Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994) (applying *Anderson* to ERISA case). Where the fact of damage is certain, but the calculation of damages is uncertain due to an employer's violation of a statute's requirement to maintain records, the rule that prohibits recovery of speculative damages does not apply. *Anderson*, 328 U.S. at 688. With regard to an employer's keeping payroll records that entirely omit certain workers such that it is clear that the records are

12

unreliable and inaccurate, one court has stated: "If a multiemployer plan has no recourse when an employer's reported hours match the hours recorded on its time sheets, even if those sheets are deemed inaccurate, that employer is effectively rewarded for keeping slipshod (or even fraudulent) records." *Darwan*, 2004 U.S. Dist. LEXIS 11967, at *80.

In this case, with regard to Loucon's cash payments to employees, the fact of damage is certain. For the relevant time period, it is undisputed that Loucon employed laborers without recording their employment or reporting their hours to the Funds. The Funds have established a reasonable basis and methodology for calculating an estimation of the amount due, and Loucon does not dispute that estimation. Accordingly, there is no genuine issue as to any material fact regarding whether Loucon is liable to the Funds for cash payments to employees in the amount of $285,476.06.

In sum, the Court holds that the Funds have proven that Loucon was delinquent in paying union dues and making benefit contributions during the audit period and that Loucon kept records that were so substandard, inaccurate, and unreliable that it forced the Funds to make a reasonable estimation of the amounts owed. Further, Loucon failed to respond to the Funds' motion for summary judgment and thus did not make the Court aware of any substantive challenges regarding the Funds' estimation. Given the record and the undisputed facts before the Court, there is no triable fact with regard to Loucon's liability to the Funds in the amount of $3,179.45, $8,287.25, and $285,476.06 or the reasonableness of the estimations or the calculations of those amounts. Accordingly, the Court grants the Funds' motion for summary judgment and enters judgment in the Funds' favor in the total amount of $296,942.76.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court rejects Defendant's objection and adopts with modification Magistrate Judge Mason's denial of Loucon's Motion to Bar Steve Krasnowski's Testimony and Report [doc. no. 158-1] and grants the Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity's motion for summary judgment [doc. no. 159-1]. The Court enters judgment in the Funds' favor in the amount of $296,942.76. This case is hereby terminated.

**SO ORDERED**   **ENTERED:** 9/28/04

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**